UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JUAN JIMENEZ,

                                                              **COMPLAINT**

                    Plaintiff,                                **07 CV 10592**

                                                              **JURY TRIAL DEMANDED**
           -against-
                                                              **ECF CASE**

THE CITY OF NEW YORK, DET. RAYMOND ALICEA,
Shield No. 0434, Individually and in their Official Capacities,
P.O. s "JOHN DOE" #1-10, Individually and in their Official
Capacities, (the name John Doe being fictitious, as the true names
are presently unknown),

                    Defendants.
-------------------------------------------------------------------------------X

        Plaintiff, JUAN JIMENEZ, by his attorney, Jon L. Norinsberg, complaining of the

defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

        1.      Plaintiff brings this action for compensatory damages, punitive damages and

attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights,

as said rights are secured by said statutes and the Constitutions of the State of New York and the

United States.

### JURISDICTION

        2.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the

First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

        3.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

### VENUE

        4.      Venue is properly laid in the Southern District of New York under 28 U.S.C. §

1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.    Plaintiff is a Latino male and was at all relevant times a resident of the City and State of New York.

7.    Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.    Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9.    At all times hereinafter mentioned, the individually named defendants, DET. RAYMOND ALICEA, Shield No. 0434, and P.O.s "JOHN DOE" #1-10, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.    At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.    Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12.    Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

**FACTS**

13.    On February 26, 2007, at approximately 5:15 p.m., plaintiff JUAN JIMINEZ was lawfully inside of his apartment at 135 Ridge Street, in the County, City and State of New York.

14.    At the aforesaid time and place, defendants entered plaintiff JUAN JIMINEZ's apartment and informed him that they wanted to question him at the police precinct.

15.    Plaintiff JUAN JIMINEZ repeatedly asked defendants why they wanted to speak with him, but defendants refused to answer, stating only that it concerned some drug activities in the building.

16.    Thereafter, defendants brought plaintiff JUAN JIMINEZ to the 7th Precinct and placed him into an interrogation room, where they proceeded to question him at length.

17.    Approximately two hours later, defendants placed JUAN JIMINEZ into a lineup.

18.    At this lineup, an individual named Christian De La Cruz, who was the victim of a robbery on December 11, 2006, was asked if recognized anyone in the lineup.

19.    Mr. De La Cruz stated unequivocally that the person who robbed him was *not* in the lineup.

20.    In fact, Mr. De La Cruz told defendant Alcea that he was "100% certain" that the individual who robbed him was not in the lineup:

> Q: And you told Officer Alicea that the person who robbed you was not in that lineup, is that right?
> A: Correct.
> Q: You told them that you were 100 percent certain of that, correct?
> A: Yes.

See Trial Transcript at 96, annexed hereto as Exhibit A.

21.    Despite Mr. De La Cruz's certainty that the person who robbed him was not in the lineup, defendant Alicea continued to press the complainant, asking him repeatedly if he was "sure."

22.    Once again, Mr. De La Cruz – who had stood face-to-face with the perpetrator for seven minutes on a well-lit stairwell – stated unequivocally that the person who robbed him was *not* in the lineup:

> Q:    And even so, he asked you if you were sure; is that right?
> A:    Yes.
> Q:    And you told him again that you were 100 percent certain that the person wasn't in the lineup, correct?
> A:    Yes.

Id. at 96.

23.    At this point, defendant Alicea asked Mr. De La Cruz to select the person in the lineup who "most resembled" the person that had robbed him.

24.    Using this much lower – and unconstitutional – standard, the complainant then said that plaintiff JUAN JIMINEZ "most resembled" the perpetrator who had robbed him.

25.    Mr. De La Cruz made it clear, however, that "really no one [in the lineup] looked like [the perpetrator]", and that plaintiff JUAN JIMINEZ could not be the perpetrator because he was "too light skinned and chubbier." Id. at 73.

26.    Notwithstanding Mr. De La Cruz's statements about the lineup – and in particular, about plaintiff JUAN JIMINEZ–defendants placed Mr. Jiminez under arrest, and charged him with committing an armed robbery against Mr. De La Cruz.

27.    The alleged robbery took place on December 11, 2006, at approximately 5:00 p.m., opposite 137 Rivington Street, in the County, City and State of New York.

28.    There was no physical evidence connecting plaintiff JUAN JIMINEZ to the alleged robbery.

29.    There was no forensic evidence connecting plaintiff JUAN JIMINEZ to the alleged robbery.

30.    There was no DNA evidence connecting plaintiff JUAN JIMINEZ to the alleged robbery.

31.    The description of the alleged perpetrator did not match the physical appearance of plaintiff JUAN JIMINEZ.

32.    No stolen property was ever found in the possession of plaintiff JUAN JIMINEZ.

33.    No weapon was ever found in the possession of plaintiff JUAN JIMINEZ.

34.    After placing plaintiff JUAN JIMINEZ under arrest, defendants filed false police reports and forwarded these reports to prosecutors in the New York County District Attorney's Office.

35.    Thereafter, defendants gave false and misleading testimony throughout the criminal proceedings.

36.    As a result of his unlawful arrest, plaintiff JUAN JIMINEZ was incarcerated for approximately five months at Rikers Island while awaiting trial.

37.    On August 9, 2007, a jury found plaintiff JUAN JIMINEZ not guilty of all charges, and the case was dismissed.

38.    As a result of the foregoing, plaintiff sustained, *inter alia*, loss of liberty, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

39.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "38" with the same force and effect as if fully set forth herein.

40.    All of the aforementioned acts of defendants, their agents, servants and employees

were carried out under the color of law.

41.    All of the aforementioned acts deprived plaintiff JUAN JIMINEZ of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

42.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

43.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

44.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983

45.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "44" with the same force and effect as if fully set forth herein.

46.    As a result of defendants' aforementioned conduct, plaintiff JUAN JIMINEZ was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege or consent.

47.    As a result of the foregoing, plaintiff sustained, *inter alia*, loss of liberty, emotional distress, embarrassment and humiliation, deprivation of his constitutional rights.

### THIRD CLAIM FOR RELIEF
### <u>MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983</u>

48.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "47" with the same force and effect as if fully set forth herein.

49.     Defendants were directly and actively involved in the initiation of criminal proceedings against Mr. Jiminez.

50.     Defendants lacked probable cause to initiate criminal proceedings against Mr. Jiminez.

51.     Defendants acted with malice in initiating criminal proceedings against Mr. Jiminez.

52.     Defendants were directly and actively involved in the continuation of criminal proceedings against Mr. Jiminez.

53.     Defendants lacked probable cause to continue criminal proceedings against Mr. Jiminez.

54.     Defendants acted with malice in continuing criminal proceedings against Mr. Jiminez.

55.     Notwithstanding the unlawful conduct of defendants, the criminal proceedings were terminated in Mr. Jiminez's favor on August 9, 2007, when all charges against him were dismissed.

56.     As a result of the foregoing, plaintiff sustained, <u>inter alia</u>, loss of liberty, emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights.

### FOURTH CLAIM FOR RELIEF
### <u>MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C.§ 1983</u>

57.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "56" with the same force and effect as if fully set forth herein.

58.     Defendants issued legal process to place plaintiff JUAN JIMINEZ under arrest.

59.     Defendants arrested plaintiff in order to obtain a collateral objective outside the

legitimate ends of the legal process.

60.    Defendants acted with intent to do harm to plaintiff JUAN JIMINEZ, without excuse

or justification.

61.    As a result of the foregoing, plaintiff sustained, *inter alia*, loss of liberty, emotional

distress, embarrassment and humiliation, and deprivation of his constitutional rights.

**FIFTH CLAIM FOR RELIEF**
**DENIAL OF CONSTITUTIONAL RIGHT TO**
**FAIR TRIAL UNDER 42 U.S.C. § 1983 DUE TO FABRICATION OF EVIDENCE**

62.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs "1" through "61" as if the same were more fully set forth at length herein.

63.    Defendant DET. RAYMOND ALICEA created false evidence against plaintiff

JUAN JIMINEZ.

64.    Defendant DET. RAYMOND ALICEA  forwarded false evidence and false

information to prosecutors in the New York County District Attorney's office.

65.    Defendant DET. RAYMOND ALICEA misled the grand jury, the trial judge and the

prosecutors by creating false evidence against plaintiff JUAN JIMINEZ and thereafter providing

false testimony throughout the criminal proceedings.

66.    In creating false evidence against plaintiff JUAN JIMINEZ,  in forwarding false

evidence and information to prosecutors, and in providing false and misleading testimony, defendant

violated plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and

Fourteenth Amendments of the United States Constitution.

67.    As a result of the defendant DET. RAYMOND ALICEA's unlawful actions, plaintiff

JUAN JIMINEZ's liberty was restricted for an extended period of time, he was put in fear for his

safety, he was physically and emotionally injured, he was repeatedly strip-searched and humiliated,

and he suffered a violation of his constitutional rights.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

68.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "67" as if the same were more fully set forth at length herein.

69.     Defendants DET. RAYMOND ALICEA, Shield No. 0434 and P.O.'s "JOHN DOE" #1-10 arrested and incarcerated Mr. Jimenez in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

70.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

71.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

72.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a)     arresting innocent persons notwithstanding  marked differences between the description of the alleged perpetrator and the physical characteristics of the person arrested;

b)     arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing;

c)     arresting innocent persons notwithstanding the existence of evidence which raises significant doubts as to the reliability and/or veracity of the complaining witness;

d)     subjecting innocent persons to police line-ups which fail to conform to fundamental standards of due process as recognized by other jurisdictions throughout the United States;

e)    subjecting innocent persons to police line-ups which fail to utilize a random double-blind identification procedure to ensure fundamental due process;

f)    subjecting innocent persons to police line-ups which fail to utilize a sequential and individual identification procedure to ensure fundamental due process; and

g)    subjecting innocent persons to arrest and prosecution based solely on identifications made during police line-ups without any independent  evidence of criminal wrongdoing.

73.    The existence fo the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the City of New York:

- **Philippe Bonny v. City of New York**,  United States District Court, Eastern District of New York, 06 CV 709;

- **Miguel Camacho v. City of New York,** Supreme Court of the State of New York, Bronx County, Index No. 26459/01;

- **Joseph Codd v. City of New York**, United States District Court, Eastern District of New York, 05 CV 5163;

- **Fred Davis v. City of New York,** United States District Court, Southern District of New York, 00 CV 0387;

- **Curtis Djomambo v. City of New York,** United States District Court, Southern District of New York, 03 CV 10314;

- **Troy Mulrain v. City of New York,** Supreme Court of the State of New York, Bronx County, Index No. 14089/01;

- **Oba Perdue v. City of New York**, United States District Court, Southern District of New York, 06 CV 2131;

- **Robert Smith v. City of New York**, United States District Court, Southern District of New York, 04 CV 9217;

- **Peter Stomer v. City of New York,** United States District Court, Southern District of New York, 00 CV  5514;

- **Long Kin Thong v. City of New York,** United States District Court, Southern District of New York, 03 CV 6528;

- **Jason Williams v. City of New York,** United States District Court, Eastern District of New York, 04 CV 3757.

74.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff JUAN JIMINEZ.

75.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by JUAN JIMINEZ as alleged herein.

76.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff JUAN JIMINEZ as alleged herein.

77.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff JUAN JIMINEZ was falsely arrested and incarcerated for two days.

78.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff JUAN JIMINEZ.

79.    Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff JUAN JIMINEZ's constitutional rights.

80.    All of the foregoing acts by defendants deprived plaintiff JUAN JIMINEZ of federally protected rights, including, but not limited to, the right:

A.    Not to be deprived of liberty without due process of law;

B.    To be free from seizure and arrest not based upon probable cause;

C.    To be free from unwarranted and malicious criminal prosecution;

D.    Not to have cruel and unusual punishment imposed upon him; and

E.      To receive equal protection under the law.

81.     As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of one million dollars ($1,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of one million dollars ($1,000,000.00).

**WHEREFORE**, plaintiff JUAN JIMINEZ demands judgment in the sum of one million dollars ($1,000,000.00) in compensatory damages, one million dollars ($1,000,000.00) in punitive damages, plus attorney's fees, costs, and disbursements of this action.

Dated: New York, New York
       November 26, 2007

BY:_____/S_____
JON L. NORINSBERG (JN-2133)
Attorney for Plaintiff
225 Broadway, Suite 2700
New York, N.Y. 10007
(212) 791-5396

# EXHIBIT A

```
 1  SUPREME COURT        NEW YORK COUNTY
    TRIAL TERM           PART  34
 2  ------------------------------------x
    THE PEOPLE OF THE STATE OF NEW YORK : INDICTMENT #
 3                                      : 1043/07
                                        :
 4                                      :
              AGAINST                   : CHARGE
 5                                      : Rob. 1
    JUAN JIMENEZ,                       :
 6                                      :
                         Defendant      :
 7  ------------------------------------x Trial

 8
                              100 Centre Street
 9                            New York, New York 10013
                              August 8, 2007
10

11
    B E F O R E:
12
            HONORABLE WILLIAM WETZEL,
13              JUSTICE OF THE SUPREME COURT

14

15  APPEARANCES:

16  For the People:      ROBERT MORGENTHAU, ESQ.
                         New York County
17                       District Attorney
                         One Hogan Place
18                       New York, New York 10013
                         By:  Craig Ortner,
19                       Assistant District Attorney

20
    For the Defendant:
21                       Liz Beal, Esq.
                         Jeanne Emhoff, Esq.
22

23
                         Lynda A. Castellano,
24                       Senior Court Reporter

25
```

Lynda A. Castellano, SCR

PEOPLE-MR. DELACRUZ-DIRECT

1    the others?

2         A.    Yes.

3         Q.    How did you answer that question?

4         A.    I told them, well, really no one looked

5    like him, the first one because he was the lightest

6    one.  He wasn't that light but-- everybody else

7    looked either older or smaller.

8         Q.    What was it about number one that lead you

9    to believe that he is not the robber?

10         A.    He was to light skinned and chubbier.

11         Q.    And when you say "chubbier" you are

12    referring to his face or whole body?

13         A.    His face.

14         Q.    By the way, did you receive a visit at your

15    home from a defense attorney in connection with this

16    case within the last week?

17         A.    Yes.

18         Q.    Do you see that defense attorney in the

19    courtroom?

20         A.    Yes.

21         Q.    Is it Ms. Beal sitting over here?

22         A.    Yes.

23         Q.    Was she with an investigator from her

24    office?

25         A.    Yes.

Anthony Moscato
Senior Court Reporter

People - Mr. Delacruz - Cross/Ms. Beal

1    Q.    You looked closely at their bodies?

2    A.    Yes.

3    Q.    And you told Officer Alicea that the

4 person who robbed you was not in that lineup; is

5 that right?

6    A.    Correct.

7    Q.    You told them that you were 100 percent

8 certain of that, correct?

9    A.    Yes.

10    Q.    And even so, he asked you if you were

11 sure; is that right?

12    A.    Yes.

13    Q.    And you told him again that you were 100

14 percent certain that the person wasn't in the

15 lineup, correct?

16    A.    Yes.

17    Q.    And he again asked you if you were sure;

18 do you remember that?

19    A.    Yes.

20    Q.    And you told him again that you were

21 absolutely certain that the person was not in that

22 lineup?

23    A.    Yes.

24    Q.    And then he asked you if you were to

25 pick one individual, the one that most closely